HECTOR DE CASTRO, Plaintiff, *v.* COMPAGNIE FRANCAISE DU TELE-GRAPHE DE PARIS A NEW YORK, Defendant.

*Insufficient performance of a contract — contract induced by false representations.*

If, with a view to enabling a corporation to do business, a person contracts to get something for the corporation which is entirely unnecessary and which, in point of fact, he does not get, the mere ascertaining by him that there is no necessity for getting it will not be a compliance with the contract.

The plaintiff in an action cannot recover where the contract upon which the action was based was entered into by the defendant relying upon erroneous and mistaken representations of the plaintiff which, though they were made in perfect good faith, were untrue.

A contract was entered into by correspondence between a foreign telegraph company, proposing to land a cable on the American coast, and a party residing in

New York city, by which the corporation agreed that if such person should obtain for the company "a declaration of the Federal government which assures to it the enjoyment, without restriction and unattackable, of the landing right which it holds from the separate government of the State of Virginia—an enjoyment which cannot be attacked by it in any connection, without obligation or prohibition to connect it at any fixed point, that it would pay to such person" a certain sum.   As to the unconditional and unattackable character of the Federal government's declaration the written opinion of an attorney in New York was to be obtained.

On application to the United States government it was learned that there was no legislation of the United States conferring authority upon the President to grant or deny the permission sought for.

The attorney in New York, whose opinion was to be obtained, wrote as follows: "I do not apprehend any difficulty or danger in the laying of the cables, so far as executive interference is concerned.   At all events, nothing further can be done to insure safety."   "When the cable has been laid its operation will be subject to the authority of Congress under the clause of the Constitution permitting that body to 'regulate commerce.'"   "This is, of course, a risk that all enterprises of this kind must incur.   This comes to all."

*Held*, that there had not been such a compliance with the requirements of the contract, as entitled the party with whom this agreement was made by the company to receive the money provided to be paid thereby.

MOTION by the plaintiff, Hector De Castro, for a new trial on a case containing exceptions, ordered to be heard at the General Term in the first instance upon the verdict of a jury in favor of the defendant, rendered by direction of the court, after a trial at the New York Circuit on the 27th day of April, 1894.

In this action it is sought to recover upon an agreement alleged to have been entered into between the parties and which is embodied in the letters or correspondence between them.   The plaintiff resided at New York, and the defendant is a foreign corporation created and existing under and by virtue of the laws of the Republic of France, and doing business at the city of Paris.

On January 22, 1892, the Legislature of Virginia passed an act permitting the defendant to land its cables on the coast of that State, to connect with telegraph, telephone and other lines in the State, and to acquire the land necessary to be used for the landing of its cables.   On September 2, 1893, the plaintiff wrote to defendant referring to steps which he had taken to assure to it the peaceful enjoyment of the right which it obtained from the State of Virginia, and saying: "I can in thirty days from now assure to you the

remittance of the Federal official document consecrating your right to land your Porto Plata cable in the United States."

On September ninth plaintiff wrote : " I am more certain than ever of the incontestable validation of the rights which the State of Virginia grants to you. Nevertheless, this act being in fact the expression of a contract entered upon between this State and your company, it is indispensable even for the validity of the rights for which we wish the Federal and incontestable sanction, that you establish here and as soon as possible the fact that your company agrees to submit to the conditions to which the enjoyment of these rights is subordinated."

Inclosed in this letter were resolutions to be adopted by defendant, which accepted the franchise conferred by the State of Virginia, and all the restrictions and obligations required by the laws of the United States, " and particularly the law relating to telegraphs, entitled LXV of the Revised Statutes of the United States." The resolutions contained a copy of the Virginia act, and also copies of sections 5263 to 5269 of the United States Revised Statutes, conferring upon telegraph companies the right to construct, maintain and operate lines of telegraph over, under or across navigable streams or waters of the United States, and requiring such lines to be so constructed and maintained as not to obstruct navigation, the language at the commencement of section 5263 being : " Any telegraph company now organized, or which may hereafter be organized, under the laws of any State shall have the right to construct, maintain and operate lines of telegraph through, * * * over and along any of the military or post roads of the United States," etc.

These resolutions the plaintiff undertook, when returned to him properly authorized, to deposit with the Postmaster-General, which when so returned he accordingly did.

On September 22, 1893, the company adopted the resolutions and transmitted them to plaintiff, and in a letter of the same date wrote him : " At its meeting of this day the council authorized me to agree with you that, if you obtain for our company a declaration of the Federal government which assures to it the enjoyment, without restriction and unattackable, of the landing right which it holds from the separate government of the State of Virginia, an enjoy-

ment which cannot be attacked by it in any connection, without obligation or prohibition to connect it at any fixed point — in a word, unconditional — you will receive   *   *   *   one hundred thousand francs.   *   *   *   You will receive besides   *   *   *   a sum of two hundred thousand francs, payable the day when the vessel having the cable on board shall put to sea for the purpose of laying it.

" The council expressly demands that to give it entire confidence you will kindly take the written opinion of Mr. Coudert upon the unconditional and unattackable character of the Federal government's declaration, and address the same to the company.   *   *   *

" It seems to me useless to insist on the necessity for the Compagnie Francaise, after the difficulties it has encountered on the first occasion, not to drop into new discussions on the validity of the landing rights which it holds since 22nd January, 1892.   I cannot, then, call your attention too much to the precision of the terms of the authorization which we propose to you.   *   *   *"

The declaration of the Federal government which the plaintiff claims met the requirements of the company's letter was as follows :

" DEPARTMENT OF STATE,
" WASHINGTON, *August* 28, 1893.

" JEFFERSON CHANDLER, Esquire,

" No. 120 Broadway, New York City :

" SIR.— I have received your recent letter enclosing a printed brief in support of an application made to this department by Cie Francaise du Telegraphe de Paris à New York, a French corporation, for permission to land its cable on the shores of Virginia, which has already been granted, as you affirm, by the State of Virginia.

" There is no legislation of the United States conferring authority upon the President to grant or deny such permission, and in the absence of such legislation, executive action of the character desired would have no binding force.

" I am, sir,
" Your obedient servant,
" W. Q. GRESHAM."

On November 2, 1893, Mr. Coudert gave a memorandum, in which, referring to the declaration of Secretary Gresham, he, among

other things, said : " I do not apprehend any difficulty or danger in the laying of the cables so far as executive interference is concerned. At all events nothing further can be done to ensure safety. It is plain that the Executive can give us no permission if it disclaims jurisdiction."

On November 4, 1893, Mr. Coudert addressed a formal communication to the company, in which he says : " In view of all the facts, and especially of the unqualified disclaimer of jurisdiction on the part of the Executive, I can see no reasonable grounds upon which such interference may be feared. * * * Once the cable has been laid, its operations will be subject to the authority of Congress, under the clause of the Constitution permitting that body to ' regulate commerce.' That is, of course, a risk that all enterprises of this kind must incur ; it is common to all."

On November 11, 1893, plaintiff wrote asking for the 100,000 francs, and transmitting a copy of Mr. Gresham's declaration and certificate of the Postmaster-General that the resolutions of the company were on file in his department, Mr. Coudert's opinions and a legal opinion of Mr. Chandler, dated October 12, 1893.

Upon the trial there were offered two additional letters from Mr. Coudert, dated in December, 1893, and February, 1894, and which were excluded because written after the commencement of the suit. There was also excluded an offer to show that plaintiff obtained a charter for the company in New York ; and an offer to show verbal declarations by Secretary Gresham was likewise excluded.

*John E. Parsons*, for the plaintiff.

*Edward W. West*, for the defendant.

O'BRIEN, J. :

We think that the exceptions presented upon these rulings excluding the evidence offered should be overruled. If, however, we regard them as relevant and competent, they do not change the conclusion to be reached upon the question of plaintiff's right to recover. That question turns upon the determination of whether the letter written by the Secretary of State of the United States, Mr. Gresham, as explained by the opinions of Mr. Coudert contained in his letters,

shows a fulfillment of the conditions upon which the plaintiff's right to compensation depended.

At the outset it will be noticed that the letter of Mr. Gresham bears date August 28, 1893, and in the absence of evidence to the contrary, its existence may, therefore, be presumed at the time when the correspondence relating to this subject was opened by the plaintiff with the defendant, the first letter in which bears date September 2, 1893.    Whether Mr. Gresham's letter was received at the latter date or its existence known to plaintiff does not appear.    If it was already in existence at that time, plaintiff's claim being based upon its procurement by him from the United States Secretary of State, it can make no difference whether he knew of its existence or not. If he did not know of its existence, he certainly did not procure it; if he did know, and the defendant did not, the contract subsequently made would be void as to the defendant and it could not be required to pay for the procuring of something which already existed.

If, however, we take the inference most favorable to the plaintiff, that Mr. Gresham's letter was not written until after the company, at the suggestion of plaintiff, had authorized him to proceed and obtain the rights mentioned in their letter, it still remains to determine whether that letter complied with the contract.

It cannot be seriously contended that the defendant entered into a contract by the terms of which it was to pay the large sum in two payments of 300,000 francs, and in return receive nothing or very little of substantial value.    We may concede, as argued by plaintiff, " that the Virginia act gave to the defendant company an unrestricted and unattackable right to land its cable."    If so, there was nothing further that it could obtain from the Federal government. The filing with the Postmaster-General of an agreement to be bound by the conditions affecting telegraph companies, though done at the suggestion of the plaintiff, did not confer any additional rights or privileges upon the defendant because it will be noticed from the language of the section quoted, that it relates to domestic corporations, its express terms confining it to telegraph companies now or hereafter organized " under the laws of any State ; " and in the opinion of the Attorney-General (1872, XIV, Opinions of Attorneys-General, 62) it is said: " It is manifest that this act was intended to apply simply to interior lines of telegraph designed for

communication between points within the United States, and not to exterior oceanic lines designed for telegraphic intercourse with foreign lands." The filing, therefore, of defendant's acceptance, in view of the effect thereof and of the terms of the agreement between the parties, was not a compliance with the contract entitling plaintiff to the compensation; and even if we regard it as a step in that direction, it did not secure to the defendant all that it sought to obtain.

This, we think, is conceded by plaintiff, who stakes his recovery upon the position that the letter of Mr. Gresham was a compliance with the contract, and was the only declaration which, in view of the situation and of the facts known to the parties, could possibly be obtained or have been within their understanding or intention. Was that, however, all that the defendant wished and that the plaintiff undertook to secure? We think a reading of the correspondence shows that the parties at the time were in doubt as to whether the Virginia act was sufficient to confer upon the defendant the right to land its cable and to engage in the business of telegraphy in the United States, and that both parties were impressed with the necessity of securing from the Federal government a recognition of their right, under the Virginia act, to do business in the United States without interference from the general government. If in this they were both mistaken, and if, upon obtaining the right from the State of Virginia, the defendant with safety could have proceeded with the laying of its cable and the transaction of its business here, then the mutual mistake into which the parties had fallen of supposing something more to be necessary, would not give the plaintiff a right to enforce the terms of such a contract in his favor as against the defendant. In other words, if, with a view to enabling the defendant to do business, the plaintiff undertook to get something which was entirely unnecessary, and which in point of fact the plaintiff did not get, the mere ascertaining that there was no necessity for getting it would not be a compliance with the contract. What the plaintiff undertook, to use his own language, was to procure a Federal official document *consecrating* the right to land the company's cable in the United States; what the defendant agreed to pay for was "a declaration of the Federal government which assures to it the enjoyment, without restriction and unattackable, of

the landing right which it holds from the separate government of the State of Virginia, * * * without obligation or prohibition to connect it at any fixed point — in a word, unconditional." This right, it would seem, the plaintiff concluded he could obtain from the executive department of our government — a right which, as stated in plaintiff's letter to Mr. Coudert of November sixth, would assure the company " against all interference, prohibitive or restrictive, by the Federal government in the exercise of the right of landing which it holds from the State of Virginia." What plaintiff obtained — assuming for the sake of argument that it was secured after the agreement was entered into — was a statement from the executive department contained in the letter of Mr. Gresham that " There is no legislation of the United States conferring authority upon the President to grant or deny such permission, and in the absence of such legislation executive action of the character desired would have no binding force."

It will thus be seen that the executive department, to which the application was made, conferred no additional rights upon the defendant, but dismissed the application with the statement that the President had no authority or jurisdiction over the subject, leaving the company, therefore, in the same position as it was before the application was made, with all its rights that it had received from the State of Virginia, and no others.

It is insisted, however, that this was an expression of an opinion by that department of the government which, by stating that it had no jurisdiction in the matter, removed doubt as to the possibility of its interference with the landing of the company's cable. It may well be that this was all that could be obtained from the Executive ; but it was not all that the plaintiff agreed to obtain, or that the defendant had a right to expect. In the letters of Mr. Coudert, which were written in response to letters confining his attention to particular questions formulated by the plaintiff, it appears that he was considering the effect of Mr. Gresham's letter so far as it related to executive action. If that was all there was, we agree with what he says in his letter of November ninth. " It is clear that the Executive having decided that he was entirely without authority, could not, without going beyond his powers, yield the required permission, but it is equally clear that if the President has not the

power to act in the matter, he could not, without usurping rights which he declares he does not possess, interfere to the injury of the company in the enjoyment of its right of landing."

We think, however, it is giving too narrow and restricted a construction to the agreement to hold that a mere disclaimer upon the part of the Executive of any authority to interfere with the company's right to land its cable, was all that the parties contemplated. The offer held out by the plaintiff, and which the defendant accepted and agreed to pay for, was a recognition and permission in some form by that branch of the Federal government. having jurisdiction of the subject, of the defendant's right to land its cable and transact business in the United States, subject to the same obligations as were imposed by Congress upon other companies. If so regarded, however, we do not think that the obtaining of Mr. Gresham's letter was a performance of the contract between the parties. Both assumed that the Executive could grant some right to the defendant, and such right was applied for; but the letter is not an assurance to the defendant, nor does it grant any permission or confer any franchise upon it; it is a statement from the Secretary of State of the view that the President was without power to grant what was asked, and was practically a refusal. As Mr. Coudert well says in one of his letters: "It is possible that a different view may be entertained by some succeeding administration of the government;" such a view for instance as might prevent the landing of the cable or impose reciprocity conditions on the defendant as a French corporation. Whether or not such an exercise of the President's power or superior force would be lawful it was immaterial for the defendant to inquire. The letter has not any permanent value or effect as a judicial decision. Notwithstanding its existence the Executive (if the power vested in that department), or Congress, by means of a general law, might impose terms or stipulations upon the defendant, as prior conditions to landing or operating the cable, which might be so onerous as practically to prohibit it if such terms were obeyed by the defendant.

We think the whole difficulty with this case is in not keeping in view what we have endeavored to point out, that the defendant entered into this contract relying upon the mistaken views of the

plaintiff as to where the power lay in the general government, which, as shown by Mr. Gresham's letter, was by plaintiff erroneously represented to be in the Executive. The defendant was not concerned with where such power vested, but desired an authoritative declaration upon the part of the Federal government that the grant conferred by the act of Virginia might be enjoyed. And while, in the light of the present knowledge of the parties, it may be claimed that the act of Virginia alone was sufficient to confer upon the defendant all the rights it required, still this would not give to the plaintiff a claim for the large amount, the first portion of which is sought to be obtained in this action, for obtaining what was practically of little use. If a declaration by Congress was required it is not claimed that plaintiff obtained it.

There is much in the suggestion that electric telegraphy, by the instrumentality of submarine cables, owned or operated by foreign corporations, comes under the head of foreign commerce, concerning which Congress has exclusive power to permit, regulate or prohibit; and not having legislated generally on the subject it is thus giving its silent permission that this branch of foreign commerce shall be free, subject of course to future legislation by Congress should it at any future time see fit to exert its power. But whether Congress has exclusive power in this matter, or whether, subject to such conditions as it may see fit to impose, each separate State can permit or prohibit the landing of submarine cables by foreign corporations, it is not necessary for us to determine, though the weight of authority would seemingly be upon the side that in respect thereto Congress has exclusive jurisdiction. The doubt created as to whether the State of Virginia or the Federal government had the right to permit the landing of the defendant's cable, was what the parties had in contemplation to remove, and we do not think it has been solved by the letter obtained from Mr. Gresham. He but expresses the opinion of the present administration as to the power of the Executive on the subject, and does not undertake to define the powers of Congress over the subject. Who had the right was a question which the plaintiff seems to have concluded in favor of the Executive, and under this mistaken notion he made the representations to the defendant which resulted in the agreement, the fair construction of which required that the doubt existing as to the

extent of the rights conferred by the act of Virginia should be removed by some authoritative declaration of the Federal government, and it was to secure this that the defendant agreed to pay the large stipulated sum.

It is contended that, whether the plaintiff had secured what he agreed to or not, was a matter referred to Mr. Coudert, as arbitrator, and that he having decided favorably to the plaintiff, this concludes the defendant. This contention, we think, is erroneous in its premises. Mr. Coudert was not agreed upon as an arbitrator, but he was selected by the defendant as the counsel where opinion was to be obtained upon the unconditional and unattackable character of the Federal government's declaration for transmission to the company. The opinion so given is clear and entirely satisfactory upon the questions with which it deals. But such opinion, instead of being an argument in favor of plaintiff, we think is strongly in favor of the defendant, for though Mr. Coudert does state that the declaration from Mr. Gresham was all that could be obtained from the Executive, he does not say it is an authoritative declaration, nor anything which amounts to that, in any way binding upon the Federal government, or in any way conferring upon the defendant any right or franchise which before that time it did not possess. And he points out that it would not be binding even upon the executive department of the government, saying: "A direct permission (to land the cable)  *  *  *  might have been revocable if given;" and again, "It is possible that a different view may be entertained by some succeeding administration of the government;" and, "Once the cable has been laid, its operations will be subject to the authority of Congress." And his conclusion, that "at all events nothing further can be done to ensure safety," is entirely different from saying that plaintiff has performed, on his part, the conditions of the contract, and that by a binding and authoritative declaration of the Federal government the defendant's Virginia landing rights are now unattackable and unconditional. Mr. Coudert is very careful in his expressions, and he clearly shows that all that plaintiff obtained was a statement that the Executive had no jurisdiction in the matter. The contract, however, does not confine it to the Executive, but was for the securing of a right which it defines as "an enjoyment which cannot be attacked by it (the Federal government) in any con-

FIRST DEPARTMENT, MARCH TERM, 1895.          [Vol. 85.

nection." This clearly does not mean that the defendant is to be assured only against the mere likelihood or probability of Executive interference, but contemplates an authoritative expression that it is to be allowed to land its cable without any conditions or obligations imposed upon it by any department of the Federal government, except such as, by the United States Revised Statutes, are imposed on all companies.

We conclude, therefore, by saying that there is a grave question whether this letter of Mr. Gresham's was not in existence when the contract was made, which would negative the claim that it was procured in consideration of the payment to be made by defendant; and that, apart from this, the plaintiff cannot recover, the contract having been entered into by the defendant relying upon erroneous and mistaken representations of plaintiff, which, though they may have been made in perfect good faith, were, nevertheless, untrue as to the power of the Executive to give an authoritative declaration and confirmation of the rights which the company had secured from the State of Virginia, to land its cable preliminary to its engaging in the business of telegraphy in the United States.

We think, therefore, that the exceptions should be overruled and the motion for a new trial denied, with costs.

VAN BRUNT, P. J., and PARKER, J., concurred.

Exceptions overruled and motion for a new trial denied, with costs.